IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BAXTER HEALTHCARE CORPORATION, )
A Delaware corporation )
 )
 )
            Plaintiff, )
 )
    v. ) No. 08 C 1206
 )
JOHN BOND, an individual, )
 )
            Defendant. )

### AFFIDAVIT OF JOHN R. BOND

John R. Bond, being first duly sworn, states as follows:

1.  I am over twenty-one years of age, and if I am called to testify as a witness, I could and would competently testify as to the matters set forth below, of which I have personal knowledge.

**Employment With Baxter**

2.  From November 12, 2007 through January 30, 2008, I worked as Baxter Healthcare Corporation's ("Baxter") Director of Connectivity, in Baxter's Global Infusion Department.

3.  Prior to being employed at Baxter, I was employed by Smiths Medical ("Smiths") for approximately four years.

4.  I am, and for my entire tenure at Baxter was, a resident of San Marcos, California.

5.  For six of the approximately ten weeks that I worked at Baxter, I commuted to Baxter's Round Lake, Illinois facility. For the remainder of the time of my employment with Baxter, I worked from my home in San Marcos, California. Baxter was

aware that I would not consider permanently relocating to Illinois until at least May 2009, because my wife was attending law school in San Diego until that time.

6. In the position of Director of Connectivity with Baxter, I was tasked with Large Volume Pump ("LVP") product development. Specifically, I was tasked with analyzing and developing ways in which to effectively transfer data to and from LVPs to outside computers and servers in hospitals and surgical care centers.

7. During my tenure with Baxter, I was not responsible for sales or contacts with Baxter's customers and I supervised only one employee.

### Resignation From Baxter

8. On January 30, 2008, I informed Baxter that I was resigning, and specifically informed Baxter that I had taken a position as General Manager of the Medical Devices Group of Moog, Inc. ("Moog").

9. On the day of my resignation, I sent my Baxter-issued laptop computer, my Baxter-issued Blackberry, employee badge, office keys and Baxter documents including a copy of a Baxter marketing plan to Baxter's Deerfield headquarters via UPS overnight delivery. At that time, I believed that I had returned all Baxter property in my possession.

10. I left all of my files and other Baxter property in my Round Lake, Illinois office.

11. At no time did Baxter demand that I return any of its property.

### Employment at Moog

12. I began my employment at Moog on February 4, 2008, and remain employed at Moog as the General Manager of its Medical Devices Group.

13. I am officed at Moog's Huntington Beach, California and Salt Lake City, Utah facilities.

14. My duties at Moog and the products I deal with at Moog differ greatly from the duties I performed and the products with which I dealt while at Baxter.

15. With respect to my duties, currently 80% of my time is allocated to negotiating sales deals with customers; I never performed this duty during my employment with Baxter.

16. The remaining 20% my duties at Moog involve creating policies, practices and procedures to assist the Medical Devices Group's operations – again duties I did not perform while employed at Baxter.

17. Currently, I spend no time in product development, whereas 100% of my time at Baxter was spent in product development.

18. Moreover, I don't anticipate that at any time during my employment at Moog, that product development will take up more than 30 % of my time.

19. Like my duties, the products I am involved with at Moog are completely different than the products I was involved with while I was at Baxter. Specifically, I am not involved with LVPs at Moog; those were the only products I dealt with while at Baxter. Although, Baxter produces electronic ambulatory pumps and specialty therapy pumps for hospitals and surgical centers, I was not exposed to those pumps during my employment at Baxter, nor did I have knowledge of Baxter's strategic plans with regard to those pumps.

20. The products I sell at Moog are mostly enteral pumps used for nutritional feedings, which are used mainly in the home-care setting; as opposed to the

Baxter LVPs, which were used in hospital and surgical care facility settings. More importantly, none of the products that I work with at Moog have a connectivity component.

### Lack of Possession and Use of Baxter Confidential Information

21. I have never disclosed any Baxter confidential, proprietary and/or trade secret information to any third party, including Moog.

22. In fact, at the time I was hired, Moog made it clear in my offer letter that I was prohibited from disclosing and/or using any Baxter property or documents in performing my duties for Moog. And my employment at Moog is subject to discipline, up to and including termination of employment, for failure to follow this directive.

23. I have no intention of ever disclosing Baxter confidential, proprietary and/or trade secret information to any third party, including Moog.

24. I have not used any Baxter confidential, proprietary and/or trade secret information for the benefit of myself or any other third party, including Moog.

25. I have no intention of ever using any Baxter confidential, proprietary and/or trade secret information for the benefit of myself or any other third party, including Moog.

26. I do not knowingly possess any Baxter confidential and/or trade secret information.

27. I do not knowingly possess any of the Baxter files identified in paragraph 12 of the Affidavit of Michael De La Cruz.

### Electronic Storage Devices

28. I was not aware of any policy that prohibited the use of USB storage devices on Baxter computers.

-4-

29. Indeed, during my employment at Baxter, Baxter provided me and other Baxter employees (including my supervisor Grant Riedinger) with USB storage devices to download and save Baxter documents and files.

30. On at least one occasion, Riedinger requested that I download a file from my computer to a USB storage device for him to use.

31. On approximately February 26, 2008, I did discover that a USB storage device at my residence contained Baxter and other information. Upon discovering that the device contained Baxter information, I destroyed the device before this lawsuit was filed or served on me. No information on the USB storage device was retrieved or disseminated to anyone.

32. Additionally, after this lawsuit was filed, I located several USB storage devices that were provided to me by my former employer, Smiths, that I do not believe contain any Baxter confidential, proprietary and/or trade secret information. I will promptly provide such USB storage devices to my counsel so that such devices can be preserved.

33. The WD1200 (Western Digital) external hard drive referenced in Baxter's complaint against me (the "Complaint") had no Baxter information stored on it, and in any event was destroyed on approximately February 24, 2008, before this lawsuit was filed or served on me.

### DriveScrubber

34. Because I commuted to work for a week at a time, I often conducted personal work on my laptop.

35. On or about December 28, 2008, prior to being contacted by Moog in January 2008 for possible employment, I placed the DriveScrubber program on my Baxter issued laptop.

36. I placed the program on the laptop so that I could permanently remove personal files that I viewed or stored on my work laptop.

37. I was not and am not aware of any Baxter policy that prohibited me from placing the DriveScrubber program on my Baxter laptop.

38. The only files for which I used the DriveScrubber program were personal files; I did not use the program on any Baxter or Baxter-related file.

39. I was not and am not aware of any Baxter policy that prohibited me from scrubbing my personal files from Baxter laptop.

40. I did not scrub the DriveScrubber program when I left Baxter's employ.

41. I did not put the DriveScrubber program on my Baxter laptop for my own personal gain, or for the gain of any third party, including Moog.

FURTHER AFFIANT SAYETH NOT.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
John R. Bond