**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BAXTER HEALTHCARE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 08 C 1206 |
| | ) | |
| JOHN BOND, | ) | Judge St. Eve |
| | ) | Magistrate Judge Ashman |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS
BAXTER'S CONVERSION CLAIM PLED IN COUNT III OF THE COMPLAINT**

Defendant John Bond ("Bond"), by and through his undersigned attorneys, brings the following Rule 12(b)(6) Motion to Dismiss the Conversion Claim Pled in Count III of the Verified Complaint ("Complaint") brought by Plaintiff Baxter Healthcare Corporation ("Baxter"), and in support thereof states as follows:

1.    The conversion claim is fatally flawed because it fails to plead a necessary element:  a demand for possession of property prior to filing this lawsuit.  Relying simply on an employment agreement – entered into before Bond even had access to the allegedly converted property – without taking the step of demanding the return of its property, Baxter fails to properly state a conversion claim.

**FACTS**

2.    The following facts as alleged by Baxter are assumed to be true only for purposes of this Motion.  Baxter is a world-wide healthcare company with facilities located throughout the United States, and whose principal place of business is in Deerfield, Illinois.

1433889v2 3/10/2008 5:07:10 PM                                                                                              9000.900

(Complaint ("Comp.") ¶ 2.)[1]  Bond is a citizen of California, residing in San Marcos, California. (*Id.* ¶ 3.)   In October 2007, Baxter hired Bond as its Director of Marketing, Connectivity Solutions, with Bond's first day of employment being November 12, 2007.  (*See* October 16, 2007 Offer Letter (the "Offer Letter"), attached as Exhibit D to the Declaration of Grant Riedinger ("Riedinger Decl."), at p. 1.)

3.     Baxter and Bond entered into an employment agreement (the "Agreement") on October 23, 2007, before Bond began working for Baxter on November 12, 2007.  (Agreement, attached as Exhibit A to the Riedinger Decl., at p. 4.)   In the Agreement, Bond agreed that:  "I will not remove any items from premises owned or leased by Baxter expect as my duties shall require, and upon termination of my employment, all items will be turned over to my supervisor at Baxter.  I understand that the failure to return company property upon termination may result in legal action to enforce this obligation."  (Agreement at ¶ 3.)

4.     While employed by Baxter, Bond was involved with and oversaw work at Baxter that Baxter alleges was confidential and proprietary to it.  (Comp. ¶ 29.)   Through his employment with Baxter, Bond allegedly had access to a World Wide Product Plan, a strategic planning document setting forth the company's priorities and goals for its product development over the next ten years, and a Monthly Operating Revenue Report, which is a highly sensitive and confidential assessment of Baxter's financial and operational health.  (Comp. ¶¶ 30-31.)

---

[1]      In the Verified Complaint's opening paragraph, Baxter incorporates into the Verified Complaint the declarations of Grant Riedinger and Michael De La Cruz, which were attached as Exhibits 1 and 2 to Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction Relief ("Baxter's Mot. for TRO"). Accordingly, this Motion may rely on both the allegations contained on the face of the Verified Complaint and in the exhibits incorporated into the Verified Complaint. *See Thompson v. Illinois Dept. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).

5.    On January 30, 2008, Bond resigned from Baxter and informed his supervisor Grant Riedinger ("Riedinger") that he was taking a position as General Manager of the Medical Devices Group of Moog Incorporated in California (Comp. ¶ 32; Riedinger Decl. at ¶ 30.)

6.    In Count III of the Complaint, Baxter claims that Bond is liable to it for conversion of its property. (Comp. p. 18.) After Bond resigned from his employment, Baxter failed to demand that Bond return any of its confidential information that he had in his possession, relying instead solely on the provision contained in the Agreement as the basis for its demand for the return of its information. (Comp. ¶ 57.)

## ARGUMENT

### I.    STANDARD ON A MOTION TO DISMISS

7.    The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint, and not its merits. *C.H. Robinson Worldwide, Inc. v. Command Transportation, LLC*, Case. No. 05 C 3401, 2005 WL 3077998, *2 (N.D. Ill. Nov. 16, 2005) (attached hereto as Exhibit 1). In making its determination, the court should assume the truth of the facts alleged in the complaint, construed liberally in favor of the plaintiff. *Id.* The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, __ U.S.__, 127 S. Ct. 1955, 1974 (2007). As such, Baxter must provide enough detail to show that its claims are plausible rather than merely speculative, and that relief is warranted. *EEOC v. Concentra Health Care Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

II.    **BAXTER'S CONVERSION CLAIM SHOULD BE DISMISSED BECAUSE BAXTER FAILS TO PLEAD THE DEMAND REQUIREMENT OF A CONVERSION CLAIM UNDER ILLINOIS LAW**

8.    Baxter's conversion claim in Count III exemplifies its unfortunate failure to make any effort to amicably resolve this matter before it rushed into Court seeking drastic remedies in the absence of any real emergency.  Had Baxter simply requested the material it alleged Bond possessed, an action for conversion would have been unnecessary.  Baxter's haste in filing suit in lieu of making a demand on Bond contravenes the purpose of the demand requirement under Illinois law and, accordingly, bars its conversion claim.  *See Runnemede Owners, Inc. v. Crest Mortgage Corp.*, 861 F.2d 1053, 1060 (7th Cir. 1988) ("Because [plaintiff] prematurely chose [to file suit], a judicial remedy will not be forthcoming").

9.    A demand for allegedly converted property is a necessary precursor to a conversion claim under Illinois law:

> To prove conversion, a plaintiff must establish that:  (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) *he made a demand for possession*; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property.[2]

*Johnson v. Grossinger Motorcorp, Inc.*, 324 Ill. App. 3d 354, 362, 753 N.E.2d 431, 438 (1st Dist. 2001) (emphasis added); *see also A.T. Kearney, Inc. v. INCA Int'l., Inc.*, 132 Ill. App. 3d 655, 664-65, 477 N.E.2d 1326, 1334 (1st Dist. 1985) (reversing finding of conversion where plaintiff failed to make demand); *Hoffman v. Allstate Ins. Co.*, 85 Ill. App. 3d 631, 633-34, 407 N.E.2d 156, 158 (2d Dist. 1980) (affirming dismissal of conversion claim where plaintiff merely requested location of allegedly converted car; "we do not believe that a request for location

---

[2]    Bond denies that Baxter will be able to establish other elements of conversion under Illinois law, but for purposes of the Motion only, limits his argument to Baxter's failure to allege a proper demand for possession as required under Illinois law.

equals a demand for possession."); *Rosenthal v. United States*, No. 97 C 1424, 1998 WL 312118, *10 (N.D. Ill. Jun. 6, 1998) (dismissing conversion claim where "Plaintiff's third amended verified complaint fails to allege that plaintiff made demand for possession which is a required allegation.") (attached hereto as Exhibit 2).

10.     Recognizing its failure to make any demand on Bond, Baxter relies solely on the portion of the Agreement between Baxter and Bond that requires Bond to return Baxter property upon termination of his employment. (*See* Comp. ¶ 57.)  But the *Agreement* – entered into well before any alleged conversion, and indeed, before Bond even began employment at Baxter, giving him access to the allegedly converted property – could not be seen as a *demand* for the return of property currently in Bond's possession. *Runnemede*, 861 F.2d at 1060.

11.     In *Runnemede*, the plaintiff and defendant entered into negotiations regarding the plaintiff's purchase of a Holiday Inn hotel. *Id.* at 1054.  The defendant agreed to finance the transaction subject to a number of conditions. *Id.*  The defendant also agreed to refund to the plaintiff the deposit on the commitment fee if the defendant determined that it could not fund the loan. *Id.* at 1055.  When the defendant eventually decided not to extend the loan, the plaintiff filed suit, asserting a conversion claim for failure to return the deposit. *Id.*  The Seventh Circuit affirmed the district court's dismissal of the plaintiff's conversion claim finding it "a strange case for an allegation of conversion" because the defendant had already agreed to return the deposit. *Id.* at 1060.  The plaintiff complained that it had not yet received the deposit per the parties' agreement, but "did not allege in its complaint that it has even requested affirmatively the return of the money.  Instead, for reasons unknown, it has chosen to seek a judicial remedy.  Because Runnemede prematurely chose this course of action, a judicial remedy will not be forthcoming." *Id.*  Finally, the Seventh Circuit explained the importance of the

demand requirement under Illinois law: ". . . there is every indication in the record that a demand would have served the primary purpose of the demand requirement under Illinois law: to allow the defendant to return the property before being required to submit to unnecessary litigation." *Id.* Such is the case here, and Baxter's conversion claim must be dismissed.

12.    Baxter apparently contends that *RKI, Inc. v. Grimes*, 200 F. Supp. 2d 916 (N.D. Ill. 2002) ("*RKI II*"), stands for the proposition that an employment agreement requiring the return of property after employment is, standing alone, sufficient to satisfy the demand element of a conversion claim. (*See* Baxter's Mot. for TRO, at pp. 9-10.)  But *RKI II* holds no such thing.  Indeed, in *RKI II*, the plaintiff did make an actual demand for possession after the defendant left the plaintiff's employ and the court expressly relied upon that fact: "the day after Grimes' resignation from Roll-Kraft, Roll-Kraft's attorneys sent Grimes a letter *demanding* compliance with his Employment Agreement." *Id.* at 923-24 (emphasis added).

13.    *RKI II* never addressed whether a provision in an employment agreement entered into before any alleged conversion could, standing alone, satisfy Illinois' demand requirement.  The fact that the employment agreement in *RKI II* contained a provision requiring the defendant to return plaintiff's property was not necessary to the holding at all.  *RKI II* expressly explained that it was merely reiterating its earlier opinion on the issue and "offer[ing] the following additional information for purposes of incorporating direct evidence via the transcript into the ruling." *Id.* at 923.  In that earlier opinion, *RKI v. Grimes*, 177 F. Supp. 2d 859 (N.D. Ill. 2001) ("*RKI I*"), the court found that the demand requirement was met by the demand letter the plaintiff sent after the termination of the defendant's employment – the court made no reference to the employment agreement in its holding. *Id.* at 877.  Thus the *RKI II* opinion does not hold that an employment agreement – entered into before any alleged conversion – can

substitute for an actual demand.  Nor could it without contradicting the Seventh Circuit's holding in *Runnemede*, which neither *RKI* opinion addressed.

14.    In *Runnemede*, as in this case, the parties agreed at the outset of the relationship that the defendant would return property following the termination of the relationship.  And in *Runnemede*, as in this case, the plaintiff failed to make any additional demand following the termination of the relationship.  As the Seventh Circuit held in *Runnemede*, such a failure dooms a conversion claim because it thwarts the purpose of the demand requirement under Illinois law – allowing the defendant an opportunity to return the property in question before being subjected to costly and unnecessary litigation.  *Runnemede*, 861 F.2d at 1060; *see also Mader v. Motorola*, No. 92 C 8089, 1998 WL 164880, *14 (N.D. Ill. Apr. 3, 1998) (dismissing conversion claim for failure to make demand; "[d]emand provides defendants a chance to return the property and avoid unnecessary litigation.") (attached hereto as Exhibit 3).

15.    Accordingly, Baxter's conversion claim, like the plaintiff's conversion claim in *Runnemede,* must be dismissed.

## CONCLUSION

WHEREFORE, Defendant John Bond respectfully requests that this Court grant

the Motion to Dismiss Count III and enter an order dismissing Plaintiff's Conversion claim pled

in Count III of the Complaint.

DATED:  March 10, 2008

                                          Respectfully submitted,

                                          JOHN BOND

                                          By  /s/ Matthew K. Organ
                                                One of His Attorneys

Michael D. Karpeles
David E. Morrison
Jon E. Klinghoffer
Matthew K. Organ
GOLDBERG KOHN BELL BLACK
  ROSENBLOOM & MORITZ, LTD.
55 East Monroe Street
Suite 3300
Chicago, Illinois  60603
(312) 201-4000