**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BAXTER HEALTHCARE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08 C 1206 |
| vs. | ) | |
| | ) | Judge St. Eve |
| JOHN BOND, | ) | Magistrate Judge Ashman |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO COMPEL DISCOVERY

Defendant John Bond ("Bond"), by and through his undersigned attorneys, pursuant to Federal Rule of Civil Procedure 37, brings the following Motion to Compel Discovery ("Motion"), and in support thereof states as follows:

## INTRODUCTION

1. Plaintiff Baxter Healthcare Corporation ("Baxter") has aggressively sought extraordinary – and unwarranted – relief from Bond. In doing so, Baxter has served two volleys of written discovery on Bond, demanded documents from Bond's current employer, Moog, Inc. ("Moog"), taken the Rule 30(b)(6) deposition of Moog in California, taken the deposition of Bond in California, and noticed the depositions of two additional Moog witnesses in New York and two more in Utah – all on an expedited basis. Both Bond and Moog have gone to great lengths and great expense to comply with Baxter's discovery demands.

2. Yet Baxter, apparently believing that discovery is a one-way street, has failed to comply with Bond's requests and, as a result, has now unilaterally canceled the deposition of one of the most important witnesses in this case: Grant Riedinger ("Riedinger"). Riedinger is Vice President of Marketing for Baxter's Global Infusion Systems group and was Bond's supervisor during Bond's brief time at Baxter. Riedinger filed a declaration ("Riedinger

Declaration") that serves as the basis for nearly all of Baxter's allegations in this case. On March 21, 2008, Bond duly served a Notice of Deposition of Grant Riedinger, setting Riedinger's deposition for April 10, 2008. Baxter agreed to present Riedinger on April 10, 2008, and Bond made arrangements in reliance. On April 8, 2008, however, Baxter indicated that it was still deciding whether to comply with certain aspects of Bond's written discovery requests and that it would not produce Riedinger on April 10, 2008 as previously agreed because it did not want to present Riedinger for another deposition in the event Baxter either decided to fully comply with Bond's written discovery requests, or was required to do so by this Court. In short, Baxter reneged on its agreement to produce a key witness because of its own refusal to comply with Bond's discovery requests.

3.      The material Baxter is refusing to produce is fundamental to Baxter's claims in this case, including versions of the very documents that Baxter contends constitute trade secret or confidential information that Bond allegedly misappropriated. Baxter is also refusing to allow Bond to take the depositions of two of the very few Baxter employees with whom Bond worked during his roughly ten-week employment with Baxter: Drew Holmes ("Holmes") and Patricia Lichard ("Lichard"). As set forth more fully below, Baxter's vague and unsubstantiated objections – primarily based upon "relevance" and "undue burden" – are wholly inappropriate, without merit, and threaten to disrupt the expedited discovery process that Baxter requested and with which Bond has dutifully cooperated.

4.      Between March 31 and April 8, 2008, counsel for Bond, pursuant to Local Rule 37.2 and this Court's standing order, made good faith efforts to confer with Baxter's counsel regarding these issues. An affidavit certifying compliance with Federal Rule of Civil Procedure 37(a)(1) is attached hereto as Exhibit A ("Affidavit of Compliance").

5.     Baxter's attempt to thwart Bond's defense, forcing him to seek this Court's assistance, has created an unnecessary side-show, the costs of which should be borne by Baxter.

## BACKGROUND

6.     From November 12, 2007 through January 30, 2008, Bond worked as Baxter's Director of Connectivity in Baxter's Global Infusion Systems Department. (Affidavit of John R. Bond, Dkt. #17 ("Bond Aff."), ¶ 2.) After resigning from Baxter on January 30, 2008, Bond began employment with Moog on February 4, 2008 as the General Manager of Moog's Medical Devices Group. (Bond Aff., ¶¶ 8, 12.)

7.     On February 28, 2008, Baxter filed a four-count Verified Complaint for Emergency Injunctive and Other Relief against Bond, alleging a breach of the employment agreement between Bond and Baxter, a violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1, *et seq.*, a violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and a conversion of Baxter's property. Along with its Verified Complaint, Baxter filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunctive Relief ("Emergency Motion").

8.     On March 4, 2008, this Court granted Baxter's Motion for Expedited Discovery. On March 6, 2008, this Court issued a Report and Recommendation ("Report and Recommendation") – subsequently adopted by Judge St. Eve – granting in part and denying in part Baxter's request for a temporary restraining order.

9.     On March 21, 2008, Bond served Defendant's Second Request for Production from Plaintiff ("Second Request for Production") (attached hereto as Exhibit B).

10.    On March 21, 2008, Baxter filed its First Amended Verified Complaint for Emergency Injunctive and Other Relief ("First Amended Complaint"), adding an additional,

separate claim for conversion.  Bond has since filed a Motion to Dismiss Count III of the First Amended Complaint.

> 11.    On March 28, 2008, Bond noticed the depositions of Holmes and Lichard.

## ARGUMENT

### I.    DISCOVERY STANDARDS

> 12.    The well-known scope of discovery under the Federal Rules of Civil

Procedure is broad:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

> 13.    "The rule vests this Court with broad discretion in determining the scope of discovery, which the Court exercises mindful that the standard for discovery . . . is widely recognized as one that is necessarily broad in its scope in order to allow the parties essentially equal access to the operative facts."  Machinery Movers, Riggers and Machinery Erectors v. Fidelity and Deposit Co. of Mary, No. 06 C 2539, 2007 WL 3120029, *2 (N.D. Ill. Oct. 19, 2007) (Ashman, J.) (quotations omitted) (attached hereto as Exhibit C).  "Therefore, a discovery request is relevant if there is any possibility that the information sought may be relevant to the subject matter of the action."  Id. (quotations omitted).  "Given the broad scope of discovery, courts seldom place significant restrictions upon the discovery process, and the burden rests with the objecting party to show that a particular request is improper."  Id.

> 14.    The discovery Bond seeks through this Motion is highly relevant to the subject matter of this action – indeed, it is relevant to the very heart of Baxter's allegations in this

matter – and Baxter's refusal to respond appropriately denies Bond the equal access to operative facts to which he is entitled to defend himself against Baxter's allegations.

## II.    BAXTER SHOULD BE COMPELLED TO PRODUCE DOCUMENTS RESPONSIVE TO BOND'S SECOND REQUEST FOR PRODUCTION.

15.    Baxter has wrongfully refused to produce materials responsive to Bond's Second Request for Production, including Request Nos. 1, 2 and 4.  As set forth below, Baxter's refusal is inappropriate.

### A.    Request No. 1:  Baxter Should be Compelled to Produce All Versions of the Materials Baxter Alleges Bond Misappropriated.

16.    Bond, as any similarly situated defendant would do, requested that Baxter produce the documents reflecting the confidential and trade secret information Baxter alleges that Bond misappropriated.  Specifically, Bond requested:  "All Documents, including prior and subsequent versions of such Documents, that Baxter contends constitute trade secret or contain confidential information, which John Bond allegedly misappropriated, converted or failed to return."  (Second Request for Production, No. 1.)  Remarkably, Baxter initially refused to produce the very material that is the subject of this lawsuit.  After multiple conferences, Baxter's counsel has agreed to produce (but has not yet fully produced) the version of the documents that Baxter contends Bond misappropriated, converted or failed to return.  But Baxter is continuing its refusal to produce either prior or subsequent versions of those documents, claiming that those documents are not reasonably calculated to lead to the discovery of admissible evidence.[1]

---

[1]    Bond currently understands that Baxter is refusing to produce only prior or subsequent versions of documents responsive to Request No. 1 of the Second Request for Production, but that Baxter will produce all documents that Baxter contends constitute trade secret or contain confidential information which Bond allegedly misappropriated, converted or failed to return.  To the extent Baxter subsequently refuses or otherwise fails to produce those documents, Bond requests that this Court compel Baxter to do so.

17.     To the contrary, Bond is entitled to view other versions of the allegedly misappropriated documents to determine whether the information Bond accessed currently constitutes a trade secret.   One of Bond's affirmative defenses is that Baxter's claim for misappropriation of trade secrets fails to the extent that any allegedly trade secret material which Bond accessed during his employment with Baxter has become obsolete or no longer has proprietary value.   See, e.g., Applied Indus. Materials Corp. v. Brantjes, 891 F. Supp. 432, 438-39 (N.D. Ill. 1994) (plaintiff could not establish likelihood of success on the merits of its claims under the Illinois Trade Secrets Act where the information defendant obtained during his employment with the plaintiff "is so outdated that it lacks current economic value.").   Given the fast-paced Baxter environment where plans and strategies can quickly and dramatically change, the material to which Bond had access during his short time at Baxter has undoubtedly been revised, and in at least some cases so significantly revised that what Bond accessed has become stale, obsolete and/or worthless to Baxter.   Bond is entitled to access those documents to prove his defense.[2]

18.     Further, the prior versions of the documents are relevant to determining the context and scope of Bond's access to Baxter information.   The prior versions may demonstrate how far along product development processes had evolved by the time Bond joined Baxter and illustrate Bond's input into documents and projects that Baxter alleges are confidential or subject to trade secret protection.

19.     Baxter also claims that Bond's request is overly broad and unduly burdensome, but Baxter has failed to explain why.   The number of allegedly misappropriated

---

[2]     For example, during his deposition, Bond noted that with respect to one of the few Baxter products he had any involvement with, a related document that Baxter claims he accessed was in version 22, but just weeks later when he departed Baxter, that document was on version 28.  (Deposition of John Bond, at p. 176) (attached hereto as Exhibit D).

confidential or trade secret documents cannot total more than roughly ten documents. Producing multiple of versions of roughly ten documents cannot be considered unduly burdensome and certainly cannot constitute a burden sufficient to justify denying Bond his right to defend himself from Baxter's allegations. Moreover, an Agreed Protective Order is in place so that the confidentiality of the documents produced is assured.

20. In an effort to resolve this matter without the necessity of Court intervention, counsel for Bond proposed to limit Bond's request to include only the subsequent versions of the responsive documents, without waiver of Bond's right to seek prior versions if necessary in the future. Baxter rejected Bond's efforts to compromise. (See Affidavit of Compliance.)

**B.    Request No. 2: Baxter Should be Compelled to Produce All Versions of the Materials Baxter Alleges Bond Accessed or Viewed Using a USB Storage Device.**

21. Baxter has repeatedly taken the position that Bond's use of USB devices during his employment at Baxter was "suspicious" and somehow nefarious. The Riedinger Declaration is replete with such accusations. (See, e.g., Riedinger Decl., at ¶ 33 ("In the course of performing [a review of Bond's computer], we noticed suspicious activity suggesting that Bond had copied confidential documents to an exterior device."); id. at ¶ 34 ("Bond accessed and downloaded confidential and propriety [sic] documents from his Baxter computer to at least ten unique exterior devices on at least six occasions. . ."); id. at ¶ 35 ("Bond also was not given permission to attach external devices to his Baxter-issued computer and download Baxter's information to those devices."); see also Declaration of Michael De La Cruz, attached to Baxter's Emergency Motion as Exhibit 2 and incorporated into Baxter's First Amended Complaint at p. 2 ("De La Cruz Decl."), at ¶ 11 ("my analysis produced a list of approximately 608 link files

showing that files or documents that existed on an externally attached device had been accessed from the computer that contained the A01 media.").)

22.    Indeed, counsel for Baxter relied upon this USB theme in presenting his oral argument in support of Baxter's motion for a temporary restraining order:  "[Baxter] took [Bond's] computer, had it retained [sic] by a forensics firm that conducted an analysis of it, and learned that Mr. Bond connected his computer to ten different USB devices and also a 120 gig hard drive."  (Transcript of Proceedings, Oral Argument, March 4, 2008, 11:39 a.m., at p. 11.) And this Court relied upon Baxter's assertions in its Report and Recommendation:

> Baxter has provided evidence to support an inference that Bond violated this contractual obligation.  First, he connected at least seven external memory devices to his work computer in a period of approximately ten weeks.  This is an unusually large number even if, as Bond claims, it was common for Baxter employees to use USB drives and there was no official policy against it.  Bond only points to one other employee, Riedinger, that used a USB device on his computer.  (Report and Recommendation, p. 9.)

23.    Baxter's assertions, however, are misleading at best, and highly prejudicial. Baxter employees regularly use USB devices within the scope of their employment at Baxter, and it was hardly unusual for Bond to have done the same – particularly given the fact that Bond commuted from California.  Moreover, the Baxter documents that Bond accessed were directly related to his work for Baxter and were accessed only for a legitimate business purpose.

24.    To demonstrate as much, Bond requested that Baxter produce:  "Every Document, including any previous or subsequent versions of such Documents, that John Bond accessed or viewed on his Baxter-issued computer using a USB Storage Device."  (Second Request for Production, No. 2.)  Bond has subsequently agreed to limit his request to include only documents, including any previous or subsequent versions of such documents, that Bond accessed or viewed on his Baxter-issued computer using a USB Storage Device <u>that Baxter</u>

alleges contain trade secret or confidential information.  Baxter has just recently agreed to produce (but has not yet fully produced) the version of those documents that Bond accessed or viewed.[3]

25.    But Baxter is refusing to produce either prior or subsequent versions of those documents.  As described above, other versions of documents Bond accessed may be relevant to the scope and context of Bond's employment at Baxter and whether the information Bond accessed constitutes trade secret or confidential information.

### C.    Request No. 4:  Baxter Should be Compelled to Produce the USB Devices of Grant Riedinger, Anatoliy Kalinovsky, Nirav Desai and Drew Holmes.

26.    Bond requested:  "Each USB device that the following persons inserted into a Baxter-issued computer:  Grant Riedinger, Anatoli Kalinovsky, Nirav Desai and Drew Holmes."  (Second Request for Production, No. 4.)  These four individuals were those who worked most closely with Bond at Baxter.  As discussed in more detail directly above, this request was necessitated by Baxter's insistence that Bond's use of USB devices was somehow unusual, suspicious or nefarious.  Bond is entitled to prove that at least these four Baxter employees regularly used USB devices in connection with their work for Baxter, demonstrating that Bond's use of a USB device was not at all unusual or inappropriate.

27.    Further, at least three of the USB devices Baxter alleges were inserted into Bond's computer actually belonged to other Baxter employees.  At the behest of Riedinger, Bond used one of Riedinger's USB devices to download files in conjunction with a Baxter

---

[3]    Bond currently understands that Baxter is refusing to produce only prior or subsequent versions of documents responsive to Request No. 2 of the Second Request for Production, but that Baxter will otherwise produce responsive documents.  To the extent Baxter subsequently refuses or otherwise fails to do so, Bond requests that this Court compel Baxter to do so.

presentation.[4]  In addition, Mr. Kalinovsky inserted a USB device into Bond's computer to copy

a presentation and perhaps other material.  Further still, yet another high-level Baxter employee

inserted a USB device into Bond's computer in order to copy the presentation onto a conference

tool used by Baxter.  These uses of USB devices by Bond – along with all of the other such uses

– were clearly sanctioned by Baxter and were for legitimate business purposes.

28.    Finally, Baxter is required to show – at least for its claim of trade secret

misappropriation – that the materials Bond allegedly misappropriated were trade secrets.  To do

that, Baxter must prove that it reasonably protected those materials from disclosure.  Bond must

be entitled to defend against this contention by, among other things, examining the USB devices

of these Baxter employees.  If Baxter employees regularly use USB devices – particularly

personal USB devices – to download allegedly trade secret information, Baxter will be unable to

prove that it takes reasonable measures to prevent disclosure of its trade secret information.

29.    Counsel for Baxter has refused to produce the requested USB devices,

contending that the request is unduly burdensome, but again provides no reason why.  Collecting

USB devices from just four Baxter employees cannot possibly constitute an undue burden.

These employees can use other USB devices to carry on their work.[5]

## III.    BAXTER SHOULD BE COMPELLED TO PRODUCE DREW HOLMES FOR DEPOSITION BECAUSE HIS TESTIMONY IS RELEVANT AND WILL NOT CAUSE ANY UNDUE BURDEN TO BAXTER.

30.    Holmes, a project manager at Baxter that worked in the same Global

Infusion Systems group as Bond, and on at least one of the same projects as Bond, will be able to

---

[4]    Riedinger did not disclose this fact in his Declaration which, as noted above, very negatively portrayed Bond's use of multiple USB devices.

[5]    Bond's counsel indicated to Baxter's counsel several weeks ago that the USB devices of other Baxter employees were relevant to this matter, and that Baxter should take affirmative steps to ensure that such USB devices were not altered in some way after Bond provided such notice to Baxter.  Presumably, Baxter has already taken such steps to secure this evidence from alteration or loss.

provide testimony highly relevant to several, if not all of, Baxter's claims in this case, as the following examples illustrate.

31.    First, Holmes has knowledge directly relevant to Baxter's effort to limit Bond's employment at Moog through the inevitable disclosure doctrine.  While Bond vehemently denies that such a theory is available or applicable to this case, and while this Court has noted that "disclosure is not inevitable" in this case (Report and Recommendation, p. 12), it is nonetheless clear that Baxter intends to vigorously pursue its inevitable disclosure theory.  (See, e.g., First Amended Complaint, ¶ 50 ("Bond misappropriated and/or threatens to inevitably misappropriate Baxter's trade secrets . . . "); id. at ¶ 51 (Bond "will inevitably utilize or disclose Baxter's trade secrets and/or confidential information.").)  Indeed, Baxter seeks an injunction preventing Bond "from carrying out any job function at Moog in which he would have responsibility for or access to products competitive with Baxter's products on which Bond worked while employed by Baxter."  (Am. Comp. at p. 23.)  It follows, of course, that Bond should be entitled to prove that his job responsibilities at Moog are substantially different from his Baxter responsibilities.  And, undoubtedly, the products on which Bond worked while employed at Baxter are highly relevant to Baxter's request for relief.

32.    Holmes is one of the very few witnesses at Baxter (Lichard being another) that can provide such testimony.  Holmes, in his position as project manager in the Global Infusion Systems group, was responsible for handling the technical side of a "Capsule" project at Baxter.  Throughout January 2008 – for four of the ten weeks that Bond worked for Baxter – Bond worked extensively on that same Capsule project and was in regular contact with Holmes about their work on the project.  Accordingly, Holmes has detailed knowledge of Bond's primary

responsibilities at Baxter and of the product on which Bond spent approximately 40% of his time at Baxter.

33.    Second, Holmes, by virtue of working in the same group and on the same product as Bond, would have knowledge of whether the information to which Bond had access was protected by Baxter, whether it was valuable to Baxter, whether it has become obsolete, or whether it has become publicly available.  In short, Holmes will be able to provide testimony relevant to whether the information at issue in this case qualifies for protection as trade secret information or was even confidential.

34.    Third, Holmes will be able to provide testimony relevant to Bond's legitimate business purpose in accessing certain Baxter information, countering Baxter's allegation that Bond somehow exceeded his authority in accessing Baxter information for "personal gain," in contravention of the Computer Fraud and Abuse Act.  (See First Amended Comp., ¶ 71 ("Bond was not authorized by Baxter to access its computer systems for personal gain. . ."); see also Riedinger Declaration, at ¶ 35 ("Bond exceeded his authorized access to Baxter's confidential information.  Bond was never given any authority to use or disclose Baxter's confidential and proprietary information for any purpose other than for a legitimate business purpose.").)  Indeed, Holmes will be able to testify that the documents and materials Bond accessed were directly relevant to the projects on which Bond worked for Baxter's benefit.

35.    Fourth, Holmes will be able to provide testimony directly relevant to Baxter's USB theme.  Bond is entitled to depose Baxter employees – including Holmes – about: (i) their use of USB devices at Baxter – including their use of personal USB devices – to demonstrate that such use was not unusual; (ii) the use of USB devices by other Baxter employees; (iii) their knowledge of any policies prohibiting the use of USB devices; and

(iv) their knowledge of Bond's use of USB devices at Baxter.  Indeed, Holmes used Riedinger's USB device to transfer a presentation from Holmes' computer to Riedinger's computer – Riedinger then gave Bond the same USB device so that Bond could also copy the presentation. Holmes was a witness to these obviously relevant circumstances.

36.    Finally, Holmes' deposition will produce no undue burden to Baxter. Holmes' deposition is expected to take no more than four hours and does not require travel outside of the Chicago area.

## IV.    BAXTER SHOULD BE COMPELLED TO PRODUCE PATRICIA LICHARD FOR DEPOSITION BECAUSE HER TESTIMONY IS RELEVANT AND WILL NOT CAUSE ANY UNDUE BURDEN TO BAXTER.

37.    For many of the same reasons described above with respect to Holmes, the testimony of Lichard will be highly relevant to Baxter's allegations in this case.  Lichard was Bond's secretary during Bond's employment at Baxter.  Accordingly, she will be able to testify about Bond's schedule, meetings Bond attended, Bond's general job responsibilities and the specific projects on which Bond worked at Baxter – all topics relevant to, among other things, Baxter's request for relief pursuant to the inevitable disclosure doctrine.

38.    Furthermore, Lichard's testimony is highly relevant to Baxter's conversion claim.  In its First Amended Complaint, Baxter inserted a new Count IV – a claim for conversion of a USB storage device.  While Baxter alleges that Bond destroyed a USB storage device "which was provided to him by Baxter," Bond does not know whether the destroyed USB device actually belonged to Baxter.  Identifying the ownership of the USB device that was destroyed may require information about which USB device or devices Lichard ordered on Bond's behalf, from whom she ordered the devices, and the serial numbers or other identifying characteristics of the devices.  Moreover, Lichard would be able to testify about Baxter's "USB theme," including

Baxter's policies and practices associated with the use of USB devices, Bond's practices with respect to USB devices, and whether Baxter provided any policy related to USB use to Bond. Lichard may also have provided or ordered USB devices for other Baxter employees in the Global Infusion Systems Department.

39.    Finally, Lichard may be able to provide testimony about any efforts on behalf of Baxter to collect any materials from Bond after his resignation, materials Bond in fact returned and materials that Bond left in his Baxter office – evidence relevant to Baxter's breach of contract claim, its conversion claim and its failure to mitigate damages.

40.    Like the deposition of Holmes, the deposition of Lichard will produce no undue burden to Baxter – the deposition will be a few hours and can be conducted locally. Lichard's deposition can be conducted on the same day as the deposition of Holmes.

## V.    BAXTER SHOULD BEAR THE COSTS OF THIS MOTION.

41.    Counsel for Baxter has failed to provide any compelling reason for Baxter's refusal to produce the above-described documents and materials in response to Bond's Second Request for Production.   Similarly, counsel for Baxter has failed to provide any compelling reason why the deposition testimony of Holmes and Lichard is not relevant to this case or why those depositions would cause Baxter any undue burden.  Indeed, to the extent there is any undue discovery burden in this case, it is being borne by Bond.  Aside from the expense of traveling around the country to attend the depositions of what Baxter intends to be no less than five Moog employees, counsel for Bond was required to file the instant Motion to obtain responses to simple requests for clearly relevant testimony and documents.  Pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), where a motion to compel is granted and the position of the non-moving party is not substantially justified, the moving party must be awarded reasonable

expenses, including attorney's fees, incurred in bringing the motion.  <u>Burke v. Prudential Ins. Co. of America</u>, No 02 C 5910, 2004 WL 784073, *2 (N.D. Ill. Jan. 29, 2004) (Ashman, J.) (granting expenses and fees where non-moving party failed to timely and fully respond to interrogatories) (attached hereto as Exhibit E).  Because Baxter's refusal to respond to Bond's discovery requests is not substantially justified, Bond hereby requests that this Court order that Baxter bear the expense associated with this Motion.

WHEREFORE, for all of the foregoing reasons, Defendant John Bond respectfully requests that this Court enter an Order:  (i) compelling the production of documents and things responsive to Bond's Second Request for Production; (ii) compelling the deposition testimony of Drew Holmes and Patricia Lichard; and (ii) ordering Baxter to bear the costs and fees associated with this Motion.

DATED:  April 10, 2008

Respectfully submitted,

JOHN BOND

By  /s/ Matthew K. Organ
    One of His Attorneys

Michael D. Karpeles
David E. Morrison
Jon E. Klinghoffer
Matthew K. Organ
GOLDBERG KOHN BELL BLACK
  ROSENBLOOM & MORITZ, LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois  60603
(312) 201-4000