**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BAXTER HEALTHCARE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08 C 1206 |
| vs. | ) | |
| | ) | Judge St. Eve |
| JOHN BOND, | ) | Magistrate Judge Ashman |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF HIS
RULE 12(b)(6) MOTION TO DISMISS BAXTER'S CONVERSION CLAIM
PLED IN COUNT III OF THE FIRST AMENDED COMPLAINT**

Defendant John Bond ("Bond"), by and through his undersigned attorneys, hereby submits this reply brief in support of his Rule 12(b)(6) Motion to Dismiss Baxter's Conversion Claim Pled in Count III of the First Amended Complaint (the "Motion").

## INTRODUCTION

Count III of Plaintiff Baxter Healthcare Corporation's ("Baxter") First Amended Verified Complaint for Emergency Injunctive and Other Relief ("Amended Complaint") cannot be saved by the misplaced arguments raised in Baxter's Response in Opposition to Defendant's Motion to Dismiss Count III of the First Amended Verified Complaint ("Response"). Baxter brought this suit against Bond in haste, making no demand for the return of the confidential information it now alleges Bond converted and, indeed, no effort to contact him regarding its unfounded allegations. Baxter's failure violated both the letter and spirit of Illinois law and bars the conversion claim Baxter alleges in Count III of its Amended Complaint.

Baxter's half-hearted argument that Bond's employment agreement ("Agreement"), entered into before Bond ever had access to the allegedly converted information, can somehow satisfy the requirement that a conversion plaintiff make a demand for the return of

allegedly converted property before filing suit, fails as a matter of law and is indeed undercut by the lone case Baxter cites in support of its novel position.  The court in *RKI, Inc. v. Grimes*, 200 F. Supp. 2d 916 (N.D. Ill. 2002), actually held that the plaintiff in that case did make a demand for the return of information through a letter sent by the plaintiff's attorney after the defendant resigned.

Baxter finally relies upon a "futility exception" to the demand requirement – an exception that cannot apply to Count III as Baxter implicitly acknowledged by pleading "futility" in Count IV of the Amended Complaint, but not in Count III.  Moreover, Baxter has alleged facts demonstrating that it intentionally decided – in furtherance of its litigation strategy – to not make any demand despite the fact that a demand would not have been futile.  Further, the cases cited by Baxter in support of its futility argument are readily distinguishable and indeed demonstrate that any futility exception cannot apply to the facts of this case where Bond rightfully came into possession of the allegedly converted property.  Finally, Baxter attempts to argue that demand would be futile because Bond *might* disclose information in the future.  Such an argument is nothing short of an attempt to write the demand requirement out of Illinois law altogether.

For all these reasons, as set forth in more detail below, Baxter's Response fails to save Count III of its Amended Complaint.

## ARGUMENT

### I.    Count III of the Amended Complaint Fails to Allege a Proper Demand for the Return of Baxter's Allegedly Confidential Information and Trade Secrets.

As anticipated in Bond's Memorandum of Law in Support of his Motion ("Memorandum"), Baxter's sole source of support for its suggestion that an employment agreement – entered into before Bond even had access to the allegedly converted property – can somehow serve, on its own, to meet the requirement under Illinois law that a plaintiff make a

pre-litigation demand for the return of allegedly converted property is *RKI, Inc. v. Grimes*, 200 F. Supp. 2d 916 (N.D. Ill. 2002). And as set forth in more detail in the Memorandum, *RKI* holds no such thing. Indeed, the excerpt from *RKI* upon which Baxter relies in its Response makes clear that the *RKI* court relied upon a demand letter that Roll-Kraft's attorneys sent to Grimes after he resigned: "Also, the day after Grimes' resignation from Roll-Kraft, Roll-Kraft's attorneys sent Grimes a letter demanding compliance with the Employment Agreement." (Response at p. 6 (quoting *RKI*, 200 F. Supp. 2d at 923-24).) The employment agreement in *RKI* was relevant to the analysis only because Roll-Kraft's attorney demanded by letter – after Grimes resigned and before the lawsuit was filed – that Grimes comply with it. *RKI* did not – and could not – hold that an employment agreement entered into before any alleged conversion could, standing alone, satisfy the demand requirement under Illinois. (*See* Memorandum at pp. 6-7.) Such a holding would eviscerate the demand requirement in all cases involving an agreement between the parties to return materials. This is not the law. *See Runnemede Owners, Inc. v. Crest Mortgage Corp.*, 861 F.2d 1053, 1060 (7th Cir. 1988) (affirming dismissal in absence of demand despite defendant's prior written agreement to return allegedly converted deposit). It was the post-termination *letter* demanding compliance with the employment agreement that satisfied the demand requirement in *RKI*. Baxter wrote no such letter to Bond in its haste to race into court and, as a result, its conversion claim fails. *Runnemede*, 861 F.2d at 1060 ("Because [plaintiff] prematurely chose [to file suit], a judicial remedy will not be forthcoming").

In an apparent effort to disavow its sole reliance on the Agreement, Baxter asserts that its pleading is sufficient merely because "it alleged a demand." (Response at p. 6.) But, as Baxter acknowledges, it must do more than merely recite the elements of a claim in its Amended Complaint: "[t]o survive a motion to dismiss, plaintiffs must plead enough factual information to

show that their claims 'are plausible'. . ."  (Response at p. 4 (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007)).   Apparently in support of its position that merely alleging "a demand" is sufficient to survive a motion to dismiss, Baxter relies on *Williams v. Thomas Pontiac-GMC-Nissan-Hyundai*, No. 99 C 882, 1999 WL 787488, at *4-5 (N.D. Ill. Sept. 24, 1999), a case that has nothing to do with whether an employment agreement can substitute for a demand upon a defendant.  In *Williams*, Judge Holderman denied the defendant's motion to dismiss a conversion claim because "the defendant Thomas Pontiac has received notice that Williams believes that Thomas Pontiac wrongfully repossessed her automobile."  *Id.* at *5.  To the extent *Williams* holds that providing notice to a defendant that it is in wrongful possession of property is sufficient to satisfy the demand requirement under Illinois law, *Williams* does not save Count III because Baxter failed to provide *any* notice to Bond that it believed Bond's possession of confidential information was somehow wrongful before filing suit. To the extent Baxter contends that *Williams* holds that facts relating to the demand requirement need not be pled, such a holding would be directly contrary to the Seventh Circuit's holding in *Runnemede* and contrary to Judge Holderman's opinion, issued just one year before *Williams*, in *Rosenthal v. United States*, No. 97 C 1424, 1998 WL 312118, *10 (N.D. Ill. Jun. 6, 1998), in which Judge Holderman dismissed a conversion claim because "Plaintiff's third amended verified complaint fails to allege that plaintiff made demand for possession which is a required allegation."  In any event, even such a holding is inapposite in this case because Baxter did plead specific facts relating to the demand requirement.  Those specific facts are what make clear that Baxter failed to make a proper demand – an employment agreement entered into before any alleged conversion cannot satisfy the demand requirement as a matter of Illinois law.  *See E.E.O.C. v. Concentra Health Srvs., Inc.*, 496 F.3d 773, 778, n.1 (7th Cir. 2007) (explaining that

the plaintiffs in *Twombley* "pleaded themselves out of court with detailed 'allegations of parallel conduct' that did not plausibly suggest" the alleged conspiracy).[1]

Baxter next contends that it was excused from making a demand because Bond knew he had an obligation to return Baxter property as evidenced by the fact that he returned Baxter property the day he resigned and believed that he had returned all Baxter property in his possession.[2]  But this fact is exactly why a plaintiff in Baxter's shoes must make a demand of the defendant before filing suit:  "to allow the defendant to return the property before being required to submit to unnecessary litigation."  *Runnemede Owners, Inc. v. Crest Mortgage Corp.*, 861 F.2d 1053, 1060 (7th Cir. 1988); *see also Mader v. Motorola*, No. 92 C 8089, 1998 WL 164880, *14 (N.D. Ill. Apr. 3, 1998) (dismissing conversion claim for failure to make demand; "[d]emand provides defendants a chance to return the property and avoid unnecessary litigation.").  Had Baxter simply provided notice to Bond that it believed he was still in possession of Baxter property, Bond could have searched for and returned any additional Baxter property that he found, avoiding this unnecessary litigation altogether.  That Bond was a good

---

[1]     To the extent Baxter is now contending that there might have been some other "demand" made, but not alleged in the Amended Complaint, its claim falls for failure to provide "fair notice of what the . . . claim is and the grounds upon which it rests."  *Concentra Health*, 496 F.3d at 776 (quoting *Twombly*, 127 S.Ct. at 1964).

[2]     In making its argument, Baxter relies on the affidavit Bond submitted in response to Baxter's motion for a temporary restraining order (the "Bond Affidavit").  Bond submitted that affidavit to demonstrate, in the most forthcoming way possible, that he had not shared any Baxter information with anyone.  Remarkably, Baxter has misstated or at least misconstrued the Bond Affidavit in its Response and Amended Complaint.  Baxter, in its Response, now shockingly contends for the first time that Baxter owned the Western Digital external hard drive.  (*See* Response at p. 1 ("Bond destroyed . . . two electronic storage devices belonging to Baxter . . .").)  The Bond Affidavit does not state that Baxter owned the Western Digital external hard drive, and the Amended Complaint makes no allegation to that effect.  Baxter's unverified suggestion in its Response in contradiction of the verified allegations in the Amended Complaint is disingenuous at best.  Similarly, Baxter now contends that Bond used the Western Digital external hard drive "to access and retain" Baxter information.  (Response at p. 7.)  This suggestion too is without merit.  The Bond Affidavit, upon which Baxter relies, affirmatively states that the Western Digital external hard drive "had no Baxter information stored on it."  (Bond Affidavit, ¶ 33.)  Indeed, Baxter's own forensics expert, in the declaration he supplied to this Court and which was incorporated into the verified Amended Complaint, was very careful to allege only that the Western Digital external hard drive "was either attached or detached" to Bond's computer on January 7, 2008 – he did not attest under penalty of perjury that Bond downloaded any Baxter information on to the Western Digital external hard drive.  (De La Cruz Declaration, ¶ 9.)

faith actor, attempting to cooperate with his former employer, does not give Baxter the right to ignore the demand requirement and ambush him with a federal lawsuit. Baxter's insistence on doing so in order to send a message, as opposed to communicating in good faith with Bond, was contrary to Illinois law and dooms its conversion claim.

## II.    Count III of the Amended Complaint is not Saved by any Futility Exception.

Perhaps recognizing that the Agreement was insufficient as a matter of law to constitute a demand, Baxter attempts to save its conversion claim by arguing that it was excused from making any demand at all because doing so would have been "futile." The futility exception to the demand requirement, however, has no application here for a number of reasons. First, Baxter fails to allege futility in Count III, and therefore its argument is unsupported by a necessary allegation. Second, the underlying facts Baxter does plead do not give rise to a "futility" argument here because Baxter alleges that it knew that Bond may have confidential electronic information in his possession but never demanded its return – such facts cannot support the application of a narrow exception to the demand requirement. Third, the case law Baxter relies upon does not support application of a "futility" exception to the demand requirement to Count III; the cases are readily distinguishable factually and make no attempt to alter the legal principle upon which the "futility" exception is founded which is not applicable here. Finally, Baxter's unsubstantiated fear that Bond *might* in the future disclose confidential information does not excuse Baxter's failure to make a demand.

### A.    The "Futility" Exception to the Demand Requirement is Not Pled in Count III.

As an initial matter, the "futility" exception to the demand requirement does not even apply to Count III – the only count subject to the Motion – and Baxter recognized as much when it drafted its Amended Complaint. Rather, Baxter appears to be conflating two different

counts for conversion in making its most recent argument in response to the present Motion addressed at Count III.   After Bond initially moved to dismiss the conversion claim pled in Count III of Baxter's original complaint, Baxter filed its Amended Complaint distinguishing the claim that Bond allegedly converted copies of its electronic information pled in Count III from the claim in Count IV that Bond allegedly converted "USB Storage Devices" – that is the physical devices themselves.   In the new Count IV, Baxter, recognizing the need to cure its failure to have made a demand, alleged that "[b]ecause Bond destroyed the USB storage device, any demand for its return by Baxter would be futile."  (Amended Comp. at ¶ 66.)  But Baxter did not similarly amend Count III to allege that any demand for the return of any copies of its confidential information that Baxter claims were made from the electronic files it maintains on its servers would have been "futile."  Instead, as noted above, Count III alleges only that "Baxter has demanded from Bond the return of its confidential information through the terms of the Agreement."  (Id. at ¶ 58.)  Accordingly, Baxter's futility argument made in its Response does not apply to the allegations contained in Count III of the Amended Complaint.  For that reason alone, the futility argument is misplaced.

### B.    Baxter has Pled Itself out of the Futility Exception.

More importantly, however, Baxter has affirmatively pled itself out of any recognizable futility exception to the demand requirement.  Baxter's claim that it would have been simply futile for it to have demanded that Bond gather any copies of its electronic information in his possession and return them to Baxter is completely belied by the verified facts Baxter has put into the record.  In Paragraph 35 of the Amended Complaint, Baxter alleges that:

> [s]hortly after Bond gave notice of his resignation and his acceptance of a new position with a direct competitor, Baxter undertook a review of his Baxter-issued computer *to ensure that he had not removed any confidential files* that he might use or disclose in his new employment with Moog.  In the course of performing that review, *Baxter noticed suspicious activity suggesting that Bond had copied*

*confidential documents* to an exterior device.  Accordingly, Baxter retained an outside computer forensics company, Kroll Ontrack Inc. ("Kroll"), to perform a complete forensic analysis.

(Amended Complaint at ¶ 35) (emphasis added).  *See also* Declaration of Grant Riedinger ("Riedinger Declaration") at ¶ 33, incorporated into the Amended Complaint.  Baxter further incorporated into the Amended Complaint the Declaration of Michael De La Cruz (the "De La Cruz Declaration").  There, De La Cruz attests that *on or about February 15, 2008*, Baxter provided Kroll with the hard drive that Baxter believed would establish that Bond had copies of confidential information in his possession.  (De La Cruz Declaration at ¶ 7.)

As Baxter itself alleges, therefore, shortly after January 30, 2008, Baxter was concerned that Bond may have had copies of confidential files in his possession, took action to investigate on its belief, confirmed its belief, and then on or around February 15, 2008 undertook an even more elaborate investigation in order to prove its belief by turning over its information to Kroll, a third-party forensics company.  While Baxter was taking elaborate steps to set up its eventual litigation against Bond, however, it intentionally elected not to send any notice to Bond of its concern that he had confidential information and of its demand that he return any Baxter information remaining in his possession.  Why would Baxter take all of its other steps to prepare for litigation but not take the additional step to demand that Bond return its property as required by Illinois law?  Presumably to gain a competitive advantage in the emergency proceedings it subsequently filed on February 28, 2008 – to surprise Bond with the litigation and of the outcome of its investigation.  Yet, at each step of Baxter's pre-litigation investigation alleged in the Amended Complaint and its attachments, beginning on January 30 when Bond resigned to join a competitor raising Baxter's concerns, to shortly thereafter when Baxter initially learned that Bond may have electronic copies of Baxter information, to February 15, 2008 when Baxter had enough information to expand its investigation and invest in a third-party forensic analysis,

to the weeks that ensued, Baxter could and should have demanded that Bond return its confidential information.

In attempting to bring the futility argument here, Baxter also relies on the Bond Affidavit in which Bond explained that, almost a full month after Bond resigned from Baxter and before this lawsuit was filed, he destroyed a USB storage device that contained Baxter information and an external hard drive that did not. Had Baxter informed Bond at any time within the almost one-month period between Bond's resignation and the time that he discovered the USB storage device in question that Baxter believed Bond was in possession of Baxter information (as its concerns, suspicions and investigation all indicated) any copies of its confidential information would still have been in Bond's possession.

Under these facts as alleged by Baxter, where Baxter intentionally laid in hiding to gain what it perceived to be a strategic litigation advantage, it is the height of absurdity to claim that it would have been "futile" to have demanded that Bond return its confidential information and that Baxter should be excused from fulfilling this pleading requirement of its conversion claim. Baxter intentionally elected to rely on the Employment Agreement signed weeks before Bond began working at Baxter and not to send a separate demand to Bond for the return of its information that Baxter believed was in his possession. Having made this intentional decision, Baxter cannot now claim that the demand it intentionally never sent would have been futile all along. It would not have been futile; it would have served the purpose for which the demand requirement is imposed under Illinois law – to give Bond an opportunity to address Baxter's concerns before this expensive litigation ensued.

### C.   Baxter's Cases Provide No Support for the Futility Exception.

Not only does Baxter plead itself out of any possible application of the "futility" exception, but the cases upon which Baxter relies to support its futility argument have no

application here and, indeed, demonstrate that the futility exception cannot apply under the facts alleged in the Amended Complaint.

For example, in *Fortech, LLC v. R. W. Dunteman Co., Inc.*, 336 Ill. App. 3d 804, 817, 852 N.E.2d 451, 462 (1st Dist. 2006), upon which Baxter relies, the court held that a demand was not required because the defendant had actually *violated a court order* when it destroyed the plaintiff's construction materials. The defendant's principal, Fortech, had obtained an order for possession of a parcel of land on which the plaintiff stored construction materials. *Id.* at 806-07, 852 N.E.2d at 454. That order was entered on May 22, 1997, but was stayed until June 21, 1997. *Id.* Contrary to the stay, as early as May 23, 1997, the defendant entered the property and used the plaintiff's construction materials, incorporating them into various structures on the property for the benefit of Fortech until they "ceased to exist." *Id.* at 806-07, 817, 852 N.E.2d at 454, 462. In *Fortech*, unlike here, there was no evidence that the plaintiff was aware that the defendant had taken possession of the plaintiff's property before the destruction of that property. The plaintiff in *Fortech* thus had no meaningful opportunity to make a demand for return of its property before it ceased to exist – it was too late by the time it learned of the defendant's actions and a demand truly would have been futile. Further, the defendant in *Fortech*, unlike Bond in this case, violated the *express terms* of a court order. *Id.* at 817, 852 N.E.2d at 462. The court thus held that:

> a 'demand' was unnecessary in this instance because K-Five's entry to the land and use of the materials was contrary to the court's order for possession of premises. We are not persuaded that Du-Kane was required to demand that Fortech and K-Five comply with the express terms of the court's order.

*Id.* Given the existence of the court order preventing the defendant from even entering the land in *Fortech*, it would have been wholly unreasonable to require the plaintiff to demand that the defendant not only not enter the land, but not destroy its property contained on the land. Only

under all of those circumstances – circumstances not present in this case – did the court find "a demand unnecessary." *Id.*

      *Pavilon v. Kaferly*, 204 Ill. App. 3d 235, 561 N.E.2d 1245 (1st Dist. 1990) offers Baxter even less support – the *Pavilon* court actually held that the plaintiff *did* make a demand, discussing any futility exception only in the alternative. *Id.* at 248, 561 N.E.2d at 1253. In *Pavilon*, the plaintiff sued the defendant – her former employer – for converting a desk that she used while working for the defendant. *Id.* at 247, 561 N.E.2d at 1252. After the plaintiff was terminated, she went to the defendant's office and tried to remove the desk, but the defendant refused to let her take it. *Id.* The defendant argued that there was no "proof" of a demand, but the court disagreed: "Though [the defendant] argues that the evidence is devoid of proof of a 'demand' for the return of the desk, we find the unrebutted testimony that he refused to allow [the plaintiff] to remove the desk to sufficiently imply that she made a demand for it." *Id.* at 248, 561 N.E.2d at 1253. Thus, in *Pavilon*, unlike here, the plaintiff satisfied the demand requirement by physically trying to take the property back from the defendant. In this case, Baxter intentionally made no attempt whatsoever to try to recover its confidential information from Bond.

      And in *A.T. Kearney, Inc. v. INCA Int'l., Inc.*, 132 Ill. App. 3d 655, 477 N.E.2d 1326 (1st Dist. 1985), the court actually refused to apply any exception to the demand requirement, explaining that "[t]he essence of conversion is not acquisition by the wrongdoer, but a wrongful deprivation of the owner thereof," before reversing the trial court's finding of conversion where the plaintiff made no demand – "it cannot be said that there has been a deprivation." *Id.* at 664-65, 477 N.E.2d 1334 (citing *Jensen v. Chicago and Western Indiana R.R. Co.*, 94 Ill. App. 3d 915, 419 N.E.2d 578 (1st Dist. 1981) and *Hoffman v. Allstate Ins. Co.*, 85 Ill. App. 3d 631, 407 N.E.2d 156 (2d Dist. 1980).) *A.T. Kearney*, therefore, hardly stands for

the proposition that Baxter need not demand the return of its confidential information in Bond's possession.

The *A.T. Kearney* court's reliance upon *Jensen* is instructive.  *Jensen* relied exclusively upon *Hobson's Truck Sales, Inc. v. Carroll Trucking, Inc.*, 2 Ill. App. 3d 978, 276 N.E.2d 89 (3d Dist. 1971).  *Jensen*, 94 Ill. App. 3d at 932, 407 N.E.2d at 592-93.  Similarly, *Pavilon* relies exclusively upon *Jensen* in its brief and alternative discussion of the exception to the demand requirement.  *Pavilon*, 204 Ill. App. 3d at 248, 561 N.E.2d at 1253.  And *Fortech* relies exclusively upon *Pavilon* and *Jensen*.  *Fortech*, 336 Ill. App. 3d at 817, 852 N.E.2d at 462. Thus, *Hobson's* is the source of authority for each of the cases upon which Baxter relies and provides the most compelling legal authority.

*Hobson's* make abundantly clear that Baxter's "futility" argument has no application to the facts of this case.  While "[i]t is true that where some other independent act of conversion can be shown there is no necessity for a demand by the person claiming ownership or right to possession and a refusal by the original taker thereof to deliver it, in order to show a conversion of the property," it is also true that:

> [D]emand and refusal *are necessary* for the maintenance of an action of conversion in all cases in which the defendant was rightfully in possession. . . . A mere detention of another's chattels which rightfully came into one's possession is not an actionable conversion. . . .

*Hobson's*, 2 Ill. App. 3d at 981, 982, 276 N.E.2d at 91 (emphasis added) (citations omitted).  In *Hobson's*, the plaintiff sold a truck to a driver that failed to make payments on the truck.  *Id.* at 980, 276 N.E.2d at 90.  The plaintiff demanded of the driver either payment or return of the truck.  *Id.* at 980, 981, 276 N.E.2d at 90-91.  The driver refused, instead entering into an arrangement with the defendant, a trucking company, through which the trucking company made some payments on behalf of the driver, imprinted its name on the truck, and used the truck to

make a delivery using a different driver.  *Id.*  That different driver destroyed the truck in an accident.  *Id.*  After learning that the truck had been destroyed, the plaintiff sued the defendant trucking company for conversion, but did not make demand on the defendant "until after the property was demolished in an accident."  *Id.* at 981, 276 N.E.2d at 91.  The plaintiff argued that under the circumstances, no demand was required to maintain a cause of action for conversion.  The appellate court in *Hobson's* disagreed because – notwithstanding the fact that the truck had been destroyed – there was no "independent act which would constitute conversion and thereby render a demand unnecessary or useless."  *Id.*

In *Hobson's*, as in this case, there was no evidence that the defendant came into possession of the allegedly converted property wrongfully.  Indeed, Baxter freely gave Bond access to its confidential information so that he could perform his job on behalf of Baxter.  As the *Hobson's* court explained:  "A mere detention of another's chattels which rightfully came into one's possession is not an actionable conversion."  *Id.* at 982, 276 N.E.2d at 91.[3]  Baxter needed to have made a demand upon Bond in order to properly allege conversion because Bond originally came into possession of the allegedly converted information "rightfully" as a Baxter employee.  (Amended Complaint, ¶ 25.)  Baxter now alleges that Bond's retention of its information after his employment became wrongful.  Under these facts, a demand and refusal were necessary.

*RKI*, upon which Baxter relies, is also instructive on this point.  There, like here, the defendant employee came into possession of the plaintiff's confidential information through

---

[3]      The distinction described by *Hobson's* was not novel, but the restatement of long-established Illinois jurisprudence.  For example, in *Bruner v. Dyball*, 42 Ill. 34 (1866), the Illinois Supreme Court carefully considered the demand requirement under Illinois law and held:  "The distinction seems to be, that, *where a party comes rightfully into possession, but his possession has become wrongful, then a demand and refusal are necessary*, to prove that he has converted the property to his own use."  *Id.* at *1 (emphasis added).

the course of employment with the plaintiff.  Despite the fact that there was ample evidence that defendants destroyed the plaintiff's confidential information in *RKI*, no "futility exception" to the demand requirement was addressed by the court.  *RKI*, 200 F. Supp. 2d at 921-23.  Instead, the court merely ruled that the plaintiff had made an adequate demand through a post-termination letter from the plaintiff's attorney to the defendant.  *Id.* at 923-24.

### D. Fear of Disclosure Does Not Support the Futility Exception

Finally, Baxter attempts to create a "futility" argument that fits Count III by suggesting that because Bond *might* have disclosed Baxter's confidential information, any demand would be futile.  (Response at p. 8.)  But Baxter has not alleged that Bond actually disclosed anything – Baxter's complaint is based upon its fear that Bond may in the future disclose confidential information.  Baxter's argument that Bond *might* have already disclosed confidential information cannot support the application of any "futility" exception.  Otherwise, the exception would swallow the rule – it is always "possible" that a defendant might dislose confidential information or otherwise dispose of a plaintiff's property.  Accordingly, Baxter's reliance on *Trans Union LLC v. Credit Research Inc.*, No. 00 C 3885, 2001 WL 648953, at *6 (N.D. Ill. Jun. 4, 2001), is inapposite.  The *Trans Union* court explicitly relied on the allegation in the complaint that the converted data had actually been shared and used.  *Id.* ("The [counter] complaint alleges that Trans Union [the counter defendant] allowed Acxiom to use [counter plaintiffs'] data for Acxiom's own benefit.").  If mere possibility were sufficient to support the application of an exception to the demand requirement, there could be no demand requirement.

### CONCLUSION

Baxter certainly could have made the effort to make a demand upon Bond for the return of its confidential information, but chose not to do so in an effort to support its litigation strategy.  Baxter's argument that the employment agreement can serve as a substitute for a

demand is contrary to the very purpose of the demand requirement – to allow the parties and the courts to avoid unnecessary litigation. It also contrary to the Seventh Circuit's holding in *Runnemede*, and unsupported by the lone case upon which it relies. (*See* Memorandum at pp. 5-7.) Baxter's "futility" argument is similarly unavailing. Tellingly, Baxter did not even allege "futility" in Count III. Baxter had no basis to do so. As the Bond Affidavit, upon which Baxter relies, makes clear, Bond destroyed a USB storage device – without disseminating its contents to anyone – because he happened to find it almost a month after he resigned from Baxter and before he had notice of this lawsuit. Had Baxter contacted Bond before filing suit and demanded the return of information in his possession, the facts of this case would be very different. Baxter's attempt to write the demand requirement out of Illinois law fails as should the conversion claim it alleges in Count III of the Amended Complaint. Accordingly, Defendant John Bond respectfully requests that this Court grant his Motion and dismiss Count III of Plaintiff Baxter Healthcare Corporation's First Amended Complaint with prejudice.

DATED: April 16, 2008               Respectfully submitted,

                                  JOHN BOND

                                  By  /s/ Matthew K. Organ_____
                                     One of His Attorneys

Michael D. Karpeles
David E. Morrison
Jon E. Klinghoffer
Matthew K. Organ
GOLDBERG KOHN BELL BLACK
  ROSENBLOOM & MORITZ, LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois  60603
(312) 201-4000

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that on April 16, 2008, he caused a copy of

**Defendant's Reply Brief in Support of His Rule 12(b)(6) Motion to Dismiss Baxter's Conversion Claim Pled in Count III of the First Amended Complaint** to be served via the Court's ECF/electronic mailing system upon the following:

> Michael D. Wexler
> Louis S. Chronowski
> Janet V. Siegel
> Dana Orr
> Seyfarth Shaw LLP
> Suite 2400
> 131 South Dearborn Street
> Chicago, Illinois  60603

> /s/ Matthew K. Organ
> Matthew K. Organ