IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BAXTER HEALTHCARE CORPORATION, ) ) Plaintiff, ) ) v. ) ) JOHN BOND, an individual, ) ) Defendant. ) | Case No. 08 C 1206 Judge Amy J. St. Eve Magistrate Judge Martin C. Ashman |

## BAXTER'S RESPONSE TO BOND'S MOTION TO COMPEL

Plaintiff, Baxter Healthcare Corporation ("Baxter") responds to Defendant John Bond's ("Bond") Motion to Compel Discovery (the "Motion") as follows:

## INTRODUCTION

Bond's Motion is an imaginative effort to distract from the focus of this lawsuit – Bond's theft of Baxter's trade secrets and Baxter's hot pursuit of the return of its information – through the filing of a motion to compel Baxter's responses to Bond's irrelevant, overly broad and unduly burdensome discovery requests. Bond seeks to entangle Baxter in the mire of its nettlesome requests, which are of questionable relevance, and to impose obligations on Baxter in excess of what is required under the discovery rules.

Baxter filed suit against Bond immediately after it discovered that Bond copied, downloaded and removed Baxter's trade secrets and confidential information from his work computer prior to his resignation from Baxter to join a direct competitor. Shockingly, this is the same competitor with which Bond interviewed and rejected a job offer which allegedly did not pay enough just prior to joining Baxter. Bond then made himself more valuable to the competitor, as if by design, by accepting employment at Baxter and working as a high-level

-1-

-2-

employee for Baxter a little over two months, during which time he was given access to highly sensitive, confidential information and trade secrets. Less than two weeks after giving notice of his resignation from Baxter, Bond started working for a direct competitor, Moog Inc. ("Moog"), a company that specializes in the development of products similar to those developed by Baxter.

A complete forensic analysis of Bond's Baxter-issued computer indicated that prior to his resignation, Bond downloaded several of Baxter's documents containing trade secrets to numerous electronic removable memory devices ("USB devices") and an external hard drive, and *then* attempted to conceal his actions through the installation and use of disk scrubber software.

The parties are engaged in expedited discovery, which has illuminated Bond's improper and illegal copying of Baxter's trade secrets and otherwise confidential information onto external devices for his own benefit, the intentional destruction of at least one USB device and the external hard drive, and the absence of a plausible explanation as to the foregoing. Notwithstanding his own malfeasance, Bond currently seeks to compel Baxter's response to document requests that are overly broad, unduly burdensome and irrelevant, as well as the deposition testimony of Bond's former secretary, which is wholly irrelevant.

## ARGUMENT

### I. BOND'S REQUEST FOR ALL PRIOR AND SUBSEQUENT VERSIONS OF REQUESTED DOCUMENTS IS OVERLY BROAD AND UNDULY BURDENSOME.

Bond's Motion seeks to compel production of "**all documents, including prior and subsequent versions of such documents**, that Baxter contends constitute trade secret or confidential information, which John Bond allegedly misappropriated, converted or failed to return" as well as "**every document, including any previous or subsequent versions of such**

**documents**, that John Bond accessed or viewed on his Baxter-issued computer using a USB storage device." (Second Request for Production Nos. 1 and 2) (emphasis added).

Baxter has already produced the documents that Baxter alleges Bond misappropriated. Forcing Baxter to produce each and every version of the misappropriated documents would result in the needless expense of time and money and adds no probative value to either Baxter's claims or Bond's defenses, of which there are none. It is undisputed that Bond copied and downloaded documents containing Baxter's trade secrets. Any prior or subsequent versions are therefore irrelevant, as the impropriety and illegality of Bond's actions has already been established. Although Bond disputes the nature and purpose of his actions, compelling production of all versions of documents copied and downloaded by Bond will not alter the facts, which are as follows: Bond started at Baxter on November 12, 2007. (Affidavit of John Bond at ¶2, Docket #17.) Between November 2007 and January 2008, he copied and downloaded Baxter documents containing trade secrets and confidential information. On December 28, 2008, Bond placed disk scrubber software on his Baxter-issued laptop. (Bond Affidavit at ¶35.) January 30, 2008, was Bond's last day at Baxter, and he started at Moog on February 4, 2008. (Bond Affidavit at ¶¶2, 12.) The very next day, on February 5, 2008, Bond's wife destroyed his external hard drive with a screwdriver and hammer. (Deposition of John Bond at 139:6-142:15, attached hereto as Exhibit A.) Then, Bond flushed at least one USB memory device down the toilet on February 26, 2008, a mere two days before Baxter filed its Complaint. (Bond Dep. at 270:24-272:1.) Notwithstanding the irrelevance of prior and subsequent versions of misappropriated documents, based on Bond's clandestine behavior and the risk of disclosure to his new employer, Baxter is disinclined to accede to Bond's requests for production of

*additional* versions of the same information that he is accused of copying, hiding, concealing and misappropriating.

Bond's request to Baxter for all prior and subsequent versions of documents that he, himself viewed, is similarly irrelevant based on the above analysis, but even more ridiculous considering Baxter's inherent inability to determine what **Bond** accessed or viewed. Requiring Baxter to engage in such mental telepathy certainly exceeds its obligations under the federal rules governing discovery. In the end, the request serves absolutely no relevant, logical or admissible purpose as Baxter has already produced the trade secrets and documents that Bond stole or destroyed.

## II. BOND'S REQUEST FOR USB DEVICES OF BAXTER EMPLOYEES IS WHOLLY IRRELEVANT.

Bond's request for USB devices of Baxter employees in his Second Request for Production No. 4 is highly objectionable on relevance grounds, as none of the employees whose USB devices are sought by Bond are named as parties to this litigation, and their own actions are of no import as to Bond's legal obligations to Baxter.

Bond argues in the Motion that Baxter should produce the USB devices of certain Baxter employees because if he proves that other Baxter employees used USB devices, he can prove that his own use was not improper. This argument not only strains credulity, but it is completely disingenuous. Baxter has never suggested that Bond was not allowed to use USB devices within the scope of his employment and for legitimate business purposes, a policy of which Bond was aware. However, Bond's decision to copy and download Baxter's trade secrets, place disk scrubber software on his computer to conceal any evidence that he copied or downloaded Baxter information, and eventually destroy the external devices used to copy the information, can hardly be classified as use within the scope of employment and/or for legitimate business purposes.

-4-

Bond's fanciful attempt to characterize his use of USB devices as normal, usual or appropriate, is severely contradicted by the fact that after he resigned from Baxter, instead of returning the USB device to Baxter, he *flushed it down the toilet!*

Additionally, Bond argues that he is entitled to production of Baxter employees' USB devices because if he can prove that other Baxter employees download Baxter's trade secrets, Baxter is therefore unable to prove that it takes reasonable measures to prevent disclosure of its trade secret information. Yet, any evidence that other Baxter employees downloaded Baxter's trade secrets would bear no relevance as to whether Bond's actions were improper, and would not alleviate his burden to prove the innocence of his actions. Simply downloading trade secrets for a legitimate Baxter purpose during the course of employment is not improper. Such activity would only be questionable if the information were removed from Baxter, not returned, destroyed or concealed by the use of disc scrubber software for which Bond has demonstrated his undisputed experience,. However, it should also be noted that this futile exercise misses the mark in another important regard which is that any such person is still a Baxter employee and has presumably not gone to work for a competitor as Bond did.

Even more confusing is footnote 5 on page 10 of the Motion, which references a conversation between counsel for both parties as to the need for a litigation hold on the USB devices of all 332 employees employed by Baxter in the division in which Bond worked. The footnote implies that Baxter's counsel agreed to ensure the preservation of USB devices of 332 Baxter employees, but email correspondence from Baxter's counsel clearly and unequivocally states that such a request would be overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, for the same reasons articulated above. (See March 18, 2008 email from Louis Chronowski to Jon E. Klinghoffer, attached

-5-

hereto as Exhibit B.)  In the same email, counsel for Baxter also reminded Bond's counsel that in the event he disagrees with Baxter's position as to the irrelevance of USB devices of Baxter employees other than Bond, he should bring the issue to the Court's attention.  Bond never brought the issue of preservation of USB devices of 332 Baxter employees to the Court's attention, thereby conceding the irrelevance of the information sought and confirming Baxter's position.

### III. BAXTER SHOULD NOT BE COMPELLED TO PRODUCE BOND'S FORMER SECRETARY FOR DEPOSITION BECAUSE IT WOULD POSE AN UNDUE BURDEN AND SUCH TESTIMONY IS OF MINIMAL RELEVANCE.

Bond's Motion also seeks to compel the depositions of Drew Holmes ("Holmes"), one of Bond's former co-workers,[1] and Patricia Lichard ("Lichard"), Bond's former secretary while at Baxter.  Bond's request for Baxter to produce Lichard in order to elicit testimony regarding Bond's schedule, meetings he attended, his general job responsibilities and specific projects he worked on, is unduly burdensome and of questionable relevance.  Bond only worked for Baxter for a little over two months, which included Thanksgiving and Christmas holidays.  Even Bond admitted that due to his travel schedule and holiday vacation time, he reported to the Round Lake facility where Lichard works **less than 20 days.**  (Bond Dep. at 116:16-117:3.)

Yet, in support of the Motion, Bond argues that Lichard's testimony is necessary to identify the owner of the USB device that was destroyed when he flushed it down his toilet at home.  Assuming, *arguendo*, that the USB device that was given to Bond during his employment at Baxter (and later flushed by Bond) is not owned by Baxter, Bond's attempt to portray Lichard

---

[1] Counsel for Baxter initially offered to produce Holmes for deposition if Bond withdrew his request for Lichard's deposition, but never received a response from Bond's counsel.  However, in light of the fulsome reasons for Holmes' deposition set forth in the Motion, Baxter no longer objects to Holmes' deposition and Bond's Motion regarding Holmes is moot.

as a witness with necessary information is far reaching and insincere, as her connection to the current dispute is tenuous.  Bond should not be permitted to employ guerilla litigation tactics and manufacture factual disputes which have the effect of dragging an innocent witness into a controversy in which she has zero involvement.  Further, granting the Motion as to Lichard's deposition would expose her to questioning from opposing counsel that may serve to harass, confuse or intimidate her.  Contrary to Bond's assertions, Lichard's testimony would not be "highly relevant" to Baxter's allegations in this case, which is demonstrated by the absence of her mention in Baxter's complaint allegations, memorandum in support of motion for temporary restraining order, declarations submitted in support thereof, Baxter's Rule 26(a)(1) disclosures, or any other pleadings or papers submitted by Baxter in support of its action against Bond.

Bond's insistence that Lichard be deposed reflects a litigation strategy that, while unique, is misguided, wasteful of time and resources and borders on abuse of the rules allowing for broad discovery.  Bond's Motion should be denied.

### IV.   BAXTER IS SUBSTANTIALLY JUSTIFIED IN ITS CURRENT POSITION AND SHOULD NOT BEAR THE COSTS OF THE MOTION IN THE EVENT IT IS GRANTED.

For the reasons articulated herein, Baxter's refusal to produce all prior and subsequent versions of the documents requested in Second Request for Production Nos. 1 and 2 and the USB devices of Baxter employees as requested in Second Request for Production No. 4, and refusal to produce Lichard for deposition, is substantially justified.  Accordingly, Baxter should not bear the costs associated with the Motion, in the event it is granted.

### CONCLUSION

Based on the foregoing, Baxter respectfully requests that the Motion be denied.

-8-

**DATED: April 22, 2008**                    Respectfully submitted,

                                             BAXTER HEALTHCARE CORPORATION


                                             By:  /s/ Louis S. Chronowski
                                                  One of Its Attorneys

Michael D. Wexler
Louis S. Chronowski
Janet V. Siegel
Dana Orr
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000 (telephone)
(312) 460-7000 (facsimile)

CH1 11463910.1

**CERTIFICATE OF SERVICE**

I, Louis S. Chronowski, an attorney, hereby certify that a true and correct copy of the foregoing **BAXTER'S RESPONSE TO BOND'S MOTION TO COMPEL** was served upon the following via the court's electronic filing system on the 22nd day of April, 2008:

>Michael D. Karpeles
>David E. Morrison
>Jon E. Klinghoffer
>Matthew K. Organ
>GOLDBERG KOHN BELL BLACK ROSENBLOOM & MORITZ, LTD.
>55 E. Monroe Street, Suite 3300
>Chicago, IL 60603

s/ Louis S. Chronowski