# EXHIBIT A

```
          IN THE UNITED STATES DISTRICT COURT

         FOR THE NORTHERN DISTRICT OF ILLINOIS

                    EASTERN DIVISION


_____
                               )
BAXTER HEALTHCARE CORPORATION, )
a Delaware Corporation,        )
                               )
           Plaintiff,          )
                               )
     vs.                       )   No.  08-C-1206
                               )
JOHN BOND, an individual,      )
                               )
           Defendant.          )
_____)
```

Deposition of JOHN BOND, at 2029 Century Park East, Suite 3300, Los Angeles, California, commencing at 8:05 A.M., Thursday, March 20, 2008, before MICHELE URBINA, CSR No. 9635.

PAGES 1 - 320

```
 1    APPEARANCES OF COUNSEL:

 2

 3        FOR THE PLAINTIFF:

 4            SEYFARTH SHAW, LLP
              BY:  LOUIS S. CHRONOWSKI, ESQ.
 5            131 South Dearborn Street
              Suite 2400
 6            Chicago, Illinois 60603-5577
              (312) 460-5000
 7            lchronowski@seyfarth.com

 8

 9        FOR THE DEFENDANT JOHN BOND AND MOOG MEDICAL
          DEVICES GROUP:
10
              GOLDBERG KOHN
11            BY:  MICHAEL D. KARPELES, ESQ.
              55 East Monroe Street
12            Suite 3300
              Chicago, Illinois 60603-5792
13            michael.karpeles@goldbergkohn.com

14                           -and-

15
              HODGSON RUSS LLP
16            BY:  PAUL PERLMAN, ESQ.
              140 Pearl Street
17            Suite 100
              Buffalo, New York 14202
18            (716) 848-1479
              pperlman@hodgsonruss.com

19

20

21

22

23

24

25
```

1  This is what -- things like that.  This is one of the one
2  times that we had.  We were in several meetings together,
3  like our staff meetings, so I think that was about it.
4      Q   And when you worked for Baxter, did you have an
5  office in Illinois?
6      A   Yes.
7      Q   And where was that located in Illinois?
8      A   Round Lake.
9      Q   At Baxter's facilities in Round Lake?
10     A   Yes.
11     Q   Is that where the global infusion systems
12 division was?
13         MR. KARPELES:  Object to form.
14         THE WITNESS:  Some of it.
15 BY MR. CHRONOWSKI:
16     Q   How many days did you report to work at the
17 Round Lake office?
18     A   Well, you know, that's funny you ask that
19 question.  Because I was trying to calculate how many
20 days I actually worked for Baxter, and I think it was
21 less than 30 working days.
22     Q   What do you mean by that?
23     A   Well, if you consider the travel and the
24 vacation time, because I was hired during Thanksgiving
25 and Christmas and New Year's, and the travel time usually

```
 1    as, you know, out of O'Hare can be a full day, so
 2    actually showing up at Round Lake was probably less than
 3    20 days.
 4            MR. CHRONOWSKI:  Let's take a look at the next
 5    exhibit.
 6            (Baxter Exhibit 32 was marked for
 7             identification by the court reporter.)
 8    BY MR. CHRONOWSKI:
 9       Q    I'm going to show you what I marked as Baxter
10    32.
11       A    It looks familiar.
12            MR. KARPELES:  (Indicating.)
13            MR. PERLMAN:  You need to slide it down, if you
14    want.
15            MR. KARPELES:  Here.
16            MR. PERLMAN:  Thank you.
17            THE WITNESS:  Can I put these back?
18            MR. CHRONOWSKI:  You can just put those wherever
19    you want.
20    BY MR. CHRONOWSKI:
21       Q    Okay.  Can you tell me what Baxter Exhibit 32
22    is?
23       A    It looks like a planning system, frankly,
24    January to December '07 on the front.
25       Q    And is this a -- is this your planning system?
```

```
 1      Q    Let me ask you this question, and this is again
 2   after you left Smiths that we're talking about here.
 3           How would you identify those USB devices?  I
 4   mean, how could you identify those?
 5      A    The Western Digital was different looking.
 6      Q    The Western Digital drive, was that a, what I'll
 7   call a -- what do I want to call those things -- it is
 8   like there may be a three inches by one inch thick --
 9      A    Yeah.
10      Q    -- type of drive?
11      A    Yes.
12      Q    With a cable off of it?
13      A    Right.
14      Q    Who owned that drive?
15      A    I owned it.
16      Q    You bought it yourself?
17      A    Yes, sir.
18      Q    When did you buy it?
19      A    I can't recall.  It was a year ago, maybe.
20      Q    Okay.  And I think you just said that there were
21   some Smiths documents on those?
22      A    Yes, sir.
23      Q    On that?
24      A    Yes, sir.
25      Q    Did you ever copy any Baxter documents to that?
```

```
 1       A    No, sir.
 2       Q    And how do you know that?
 3       A    Because I never used it like that at Baxter.
 4       Q    Okay.  Now, you have already testified that that
 5   was destroyed?
 6       A    Yes, sir.
 7       Q    How did it get destroyed?
 8       A    My wife destroyed it.
 9       Q    Why?
10       A    Because we have lost it a few times or misplaced
11   it a few times, and the last time that she found it, she
12   copied the pictures off of it -- from what I know, she
13   copied the pictures off of it that she wanted and it was
14   decided to destroy it.
15       Q    And how was it destroyed?
16       A    With a screwdriver and a hammer from what I
17   understand she told me.
18       Q    And did she ever tell you why she physically
19   destroyed the device?
20       A    Yes.
21       Q    Why?
22       A    Because we were afraid that someone would get
23   ahold of it, and it had personal data on there such as
24   bank accounts, budgets, Social Security numbers,
25   pictures, that sort of thing.
```

```
 1      Q    Okay.
 2      A    And that, you know, we just didn't feel
 3 comfortable because I've lost it or misplaced it a couple
 4 times.
 5      Q    Uh-huh.
 6      A    And we felt we didn't need it anymore because we
 7 were not using it.
 8      Q    And when was it destroyed?
 9      A    A Monday.  I think it is the last Monday of
10 February.
11      Q    If you look -- direct your attention to page
12 552.  JB 552, I should say.
13           MR. KARPELES:  We're on Exhibit 32 still?
14           MR. CHRONOWSKI:  Yes.
15           THE WITNESS:  Yes, sir.
16 BY MR. CHRONOWSKI:
17      Q    Would -- then can we deduce that date was
18 February 25th?
19           MR. KARPELES:  I'm going to object to the lack
20 of foundation for that and the conclusion.
21 BY MR. CHRONOWSKI:
22      Q    Well, you said it was the last Monday in
23 February; right?
24           MR. KARPELES:  If I'm looking at the right
25 document, it says, Thursday, January 24th.
```

```
 1            MR. CHRONOWSKI:  Well, there's a calendar for
 2   February.
 3            THE WITNESS:  You are just asking based on --
 4   well, so what's the question?
 5            MR. KARPELES:  I'm confused now.  You brought me
 6   to that page and told me it was February, and it says
 7   January, so you are just asking him to look at the box on
 8   there that says February?
 9            MR. CHRONOWSKI:  I'm asking --
10            THE WITNESS:  If the calendar's right, that
11   looks like the right date.
12   BY MR. CHRONOWSKI:
13       Q    So February 5th, 2008, would be the date it was
14   destroyed; correct?
15       A    Yes.
16       Q    What happened to it when it was destroyed?
17       A    I believe she -- well, I can't assume.
18       Q    You don't know what happened?
19       A    No.
20       Q    Did she tell you she threw it out?
21       A    Yes.
22       Q    All right, since --
23       A    I don't know where.
24       Q    It is in some unknown named landfill?
25       A    Yes.
```

```
 1   requested you download a file from your computer to a USB
 2   storage device.
 3        A    Yes.
 4        Q    Can you tell me when it was?
 5        A    Can I tell you when it was?
 6        Q    Can you tell me when it was?
 7        A    It was during the week of the GIS meeting.
 8        Q    The January 21st --
 9        A    Yes.
10        Q    -- of 2008?
11        A    Yes.
12        Q    What file did he ask you to download to a USB
13   device?
14        A    Actually, he asked me to download a file into
15   his USB, I believe it was.  I don't recall, but I think
16   it had to do with the Capsule stuff.
17        Q    Okay.  All right.  Now, I think we've already
18   established that any USB device you have had in your
19   possession, custody and control, you have since turned
20   over to your counsel?
21        A    Oh, yes.
22        Q    I want to direct your attention now to paragraph
23   31.
24             "On approximately February 26th, 2008, I did
25   discover that a USB device had" -- "USB storage device at
```

1   my residence contained Baxter and other information."
2       A   Uh-huh.
3       Q   Upon discovering that the device contained
4   Baxter information, I destroyed the device before the
5   lawsuit was filed or served on me.  No information was
6   disseminated to anyone.
7           Do you see that?
8       A   Yes.
9       Q   How was that USB device destroyed?
10      A   I stepped on it and threw it down the toilet.
11      Q   Why did you not send it back to Baxter?
12      A   That's the million dollar question.  Probably
13  because it had been three and a half weeks past.  Baxter
14  didn't ask for any property back or a letter or anything
15  like that.  I had discussions with HR and that sort of
16  thing.
17          And my Moog agreement, I was worried about that,
18  so I thought the best way to get rid of anything and risk
19  nothing would be to get rid of it myself, and it was just
20  destroy it where no one would be able to use it ever
21  again.
22      Q   What did you do with it after you stepped on it?
23      A   I threw it down the toilet.
24      Q   Okay.  I take it you flushed the toilet after
25  that?

```
 1      A    I flush after I used it.
 2           MR. KARPELES:  I'm not sure you'll ever ask that
 3   question ever again.
 4           MR. CHRONOWSKI:  You never --
 5           THE WITNESS:  You never know.  And I did -- it
 6   did go down, so --
 7   BY MR. CHRONOWSKI:
 8      Q    Now, what type of Baxter information did you
 9   discover was contained on this device?
10      A    I can only recall one.
11      Q    What was that?
12      A    That was the Vidamed marketing plan, M-1
13   marketing plan.
14      Q    And that's one of the documents we looked at at
15   one point?
16      A    (Witness nods head.)
17      Q    Yes?
18      A    Yes.
19      Q    All right.  Now, you used the disk scrubber
20   software on your Baxter computer?
21      A    Yes, sir.
22      Q    When did you first download it on your computer?
23      A    I believe it was in December.
24      Q    Why did you eliminate that?
25      A    To eliminate any personal files I put on Baxter
```